IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

LAURENCE DUANE LANG,

    Petitioner,

    v

BEN CURRY, Warden,

    Respondent.

No C 05-5130 VRW (PR)

ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS

    Laurence Duane Lang, a state prisoner at the Correctional Training Facility in Soledad, California, petitions pro se for a writ of habeas corpus pursuant to 28 USC § 2254 challenging the California Board of Prison Terms' (BPT) December 7, 2004 decision to deny him parole.

    Lang originally filed this petition on November 10, 2005 in the Central District of California Court. Doc #1. The petition then was transferred to the Northern District, in which the parole denial originally occurred. Doc #1. In its March 24, 2006 order, the court found Lang's claims colorable under section 2254 and

\\

ordered respondent to show cause why a writ of habeas corpus should not be issued. Doc #5.

Respondent instead moved to dismiss on the ground that Lang lacked standing and had insufficiently pled his claims because he failed to specify the date of the challenged parole decision. Doc #6 at 2-3. Respondent also based his motion to dismiss on the ground that Lang had not implicated section 2254 because he had not cited any clearly established federal law that the state court had violated. Id at 4. On December 1, 2006, the court found respondent's federal question argument to be "without merit," but granted respondent's motion with respect to insufficient pleadings, directing Lang to amend his petition within thirty days to include the date of the parole decision. Doc #8. On December 8, 2006, Lang amended his petition to include the parole denial date. Amendment to Petition by Laurence Duane Lang (unnumbered docket reference).

Respondent then filed a second motion to dismiss based on Lang's failure to exhaust his state court remedies. Doc #11. Lang's petition contained four claims: (i) BPT violated his rights under the Fifth and Fourteenth Amendments by denying his parole, (ii) the superior court violated his rights under the Fifth and Fourteenth Amendments by failing to find that BPT unreasonably considered only static factors, (iii) the state courts violated his rights under the Fifth and Fourteenth Amendments by failing to find that BPT unreasonably disregarded his recent reform and (iv) section 3401 (a) and (b) of the California Penal Code is unconstitutionally vague. Doc #1. Although Lang raised his fourth claim to the California Supreme Court on discretionary review, he

did not raise this claim to the lower state courts. Doc #11 at 3. In its November 29, 2007 order, the court granted respondent's motion, informing Lang that he must either withdraw his unexhausted claim and proceed with his three exhausted claims or drop his entire petition until all his claims are exhausted. Doc #16. Lang subsequently moved to withdrew his fourth claim, doc #17, which the court granted, doc #18.

Respondent has since filed an answer to the court's order to show cause why a writ of habeas corpus should not be issued, doc #20, and Lang has filed a traverse, doc #21.

I

On February 24, 1980, Lang and two others agreed to commit a robbery and carried a rifle with them for that purpose. Doc #20, Exh 3 at 7. The three young men encountered another group of three young men and the former led the latter into an alley where one of Lang's partners demanded the others' money and shot one of them in the chest with the rifle. Id at 7. After both groups had fled the alley, Lang's other partner suggested they return to take money from the man whom they had shot. Id at 7. Upon returning to the alley, the two groups of men reencountered each other and Lang fired the rifle hitting another of the men who later died. Id at 8.

On February 19, 1981, a Los Angeles County superior court jury convicted Lang of second degree murder and attempted robbery and he was sentenced to state prison for an indeterminate term of seventeen years to life with the possibility of parole. Doc #20, Exh 1.

3

On December 7, 2004, BPT determined Lang unsuitable for parole, finding that he still posed an "unreasonable risk of danger to society or threat to public safety if released." Doc #20, Exh 2 at 52. Lang petitioned the Los Angeles County superior court for writ of habeas corpus, which that court denied in a June 15, 2005 decision. Doc #20, Exh 8. Lang's appeals to the California Court of Appeal and the California Supreme Court were similarly denied on July 28, 2005 and October 12, 2005, respectively. Doc #20, Exhs 10, 12.

The instant federal petition for a writ of habeas corpus followed.

II

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), codified in 28 USC § 2254, provides "the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petitioner is not challenging his underlying state court conviction." <u>White v Lambert</u>, 370 F3d 1002, 1009-10 (9th Cir 2004). Under the AEDPA, the court may entertain a petition for habeas relief on behalf of a California state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 USC § 2254(a).

The writ may not be granted unless the petitioner has exhausted his state court remedies and the state court's adjudication of the petition was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or was "based

on an unreasonable determination of the facts."  Id at § 2254(b), (d).  A state court's findings of fact are entitled to a "presumption of correctness," which may only be overturned by "clear and convincing evidence."  Id at § 2254(e)(1).

### III

Lang seeks federal habeas relief from BPT's December 7, 2004 decision to deny his parole on the ground that the decision did not comport with due process because it was not supported by some evidence and was unfairly based on the immutable nature of his commitment offense and pre-commitment history.  Doc #21 at 16, 23.

To prevail on a due process claim, one must show the existence of a liberty interest with which the state has interfered and show that procedures related to the deprivation of that interest were constitutionally insufficient.  <u>Kentucky Department of Corrections v Thompson</u>, 490 US 454, 460 (1989); <u>Biggs v Terhune</u>, 334 F3d 910, 913 (9th Cir 2003).

#### A

While "there is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence," <u>Greenholtz v Inmates of Nebraska Penal & Correction Complex</u>, 442 US 1, 7 (1979), the Supreme Court has recognized that prisoners may have a liberty interest in parole if the state parole statutes contain "mandatory language."  <u>Board of Pardens v Allen</u>, 482 US 369, 377-78 (1987).

Under California's parole statutes, prisoners serving an indeterminate life sentence become eligible for parole release

5

after serving the minimum confinement term required by statute. In re Dannenberg, 34 Cal 4th 1061, 1069-70 (2005); see Cal Penal Code § 3041(a). Section 3041 also states that BPT "shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of the current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of the incarceration." Id at § 3041(b). That statute notes that BPT "shall normally set a parole release date." Id at § 3041(a). Therefore, "[u]nder the 'clearly established' framework of Greenholtz and Allen, * * * California's parole scheme gives rise to a cognizable liberty interest in release on parole." McQuillion v Duncan, 306 F3d 895, 902 (9th Cir 2002).

The superior court decision did not address whether a liberty interest existed, instead finding the BLT's decision was procedurally sufficient. That the superior court considered the second part of this due process analysis, however, suggests that it implicitly found a liberty interest. See Kentucky Department of Corrections, 490 US at 460 (explaining that the first step in a due process claim is to determine whether a liberty interest exists). The issue here is whether Lang's liberty interest in release on parole was denied without adequate procedural due process.

B

The Supreme Court has held that in order to satisfy "the minimum requirements of procedural due process," decisions by a prison disciplinary board which affect a prisoner's release date must be supported by "some evidence in the record". Superintendent

v Hill, 472 US 445, 455 (1985). This standard does not require "examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence;" it merely requires that some evidence in the record "could support the conclusion reached." Id at 455-56. The standard does also requires that the evidence have some indicia of reliability. Biggs, 334 F3d at 915; McQuillion, 306 F3d at 904.

Respondent argues that BPT's decisions need not be supported by even some evidence because the Supreme Court has not specifically applied this standard to parole cases and that the standard therefore is not a "clearly established federal law" as required by AEDPA. Doc #20 at 7; see 28 USC § 2254(d)(1).

Respondent's argument is without merit. The Supreme Court has clearly articulated that prisoners have liberty interests in parole release when state parole statutes contain mandatory language, Allen, 482 US at 377-78, and California's parole statute contains mandatory language. McQuillion, 306 F3d at 902. The Fourteenth Amendment prohibits states from depriving individuals of their liberty interests without due process and "[t]he touchstone of due process is protection of the individual against arbitrary action of government." Wolff v McDonnell, 418 US 539, 558 (1974). "To hold that less than the some evidence standard is required would violate clearly established federal law because it would mean that a state could interfere with a liberty interest –– that in parole –– without support or in an otherwise arbitrary manner." Sass v BPT, 461 F3d 1123, 1129 (9th Cir 2006).

\\

\\

The court will review BPT's decision to deny parole to Lang — its ninth such decision — under the some evidence standard.

1

Although BPT's decision appears to have been based primarily on Lang's commitment offense, the decision was also based on Lang's withdrawal from alcoholics anonymous (AA) despite his history of substance abuse. BPT additionally expressed concern with Lang's "iffy" release plans, his unstable social history and his insufficient remorse. A review of the record shows that some evidence supported these reasons and BPT's decision to deny parole.

In addition to California Penal Code section 3041, which directs BPT to set a parole date unless "public safety requires a more lengthy period of incarceration," California's Code of Regulations instructs BPT to consider numerous factors tending to show suitability or unsuitability for parole release. The board utilized these factors in determining that Lang was unsuitable for release, finding Lang's commitment offense to have included multiple victims, finding the motive for the crime was very trivial and finding Lang to have an unstable social history. See Cal Code Regs tit 15 § 2402(c)(1)(A), (c)(1)(E), (c)(3).

Some evidence supports these three findings. The record clearly shows that while Lang killed one person, he and his partners attempted to rob three people and his co-felon shot another of them. BPT was justified in finding triviality in Lang's killing, which occurred after Lang's group had already fled from a botched robbery and after one person had already been shot. "In making a judgment call" about "the nature of the conviction

8

offense, the Board cannot be categorized as acting arbitrarily." <u>Sass</u>, 461 F3d at 1129. Lang's own testimony during his parole hearing provides some evidence of his unstable social history: "My sense of self-esteem was so low that I needed to be needed by others and that kind of took me down the wrong path." Doc #20, Exh 2 at 17.

Regarding Lang's substance abuse, BPT's decision specifically noted that Lang had been under the influence of Phencyclidine (PCP) during his commitment crime, that Lang had used alcohol and marijuana prior to his offense (which he committed while eighteen years old) and that Lang had twice been reprimanded in prison for possessing prohibited drugs. Id at 54. The record contains evidence that Lang was under the influence of PCP during his commitment offense, doc #20, Exh 3 at 10, and that he had used marijuana and alcohol previously, id at 3. The record also contains Lang's disciplinary summary from San Quentin prison, which shows a reprimand for possession of inmate-created alcohol in 1982 and a reprimand for possession of other drugs in 1981. Doc #20, Exh 4.

BPT's decision also expressed concern that Lang "has not yet sufficiently participated in self-help." Doc #20, Exh 2 at 54. Although the decision does not elaborate on this point, Lang admitted during the parole hearing to discontinuing his attendance of AA sometime during his incarceration. Id at 40.

BPT's concern about Lang's substance abuse was exacerbated by what it considered an insufficient psychological analysis of the issue. Id at 53-54. Although a psychological report discussing substance abuse was prepared in June 2003, that

9

1 report did not discuss Lang's use of PCP or his prison violations
2 for prohibited substances. See doc #20, Exh 5. The genuineness of
3 BPT's concern is evidenced by its request for a new psychological
4 report to specifically consider the substance abuse issue. Doc
5 #20, Exh 6. Lang's history of substance abuse, his withdrawal from
6 substance abuse related self-help and the lack of psychological
7 analysis on this issue clearly provided more than some evidence
8 supporting BPT's determination that Lang was not suitable for
9 release.

10 During the parole hearing, a deputy district attorney
11 (DA) expressed concern that Lang had not expressed complete remorse
12 for his actions. The DA noted inconsistences in Lang's 2003
13 psychological evaluation: (i) Lang stated that his reason for
14 returning to the alley after the initial shot was to verify whether
15 his partner had actually shot someone –– the DA believed Lang
16 returned to rob the victim –– and (ii) Lang stated that he fired
17 the gun out of fear –– the DA noted the luck which would be needed
18 to strike and kill a person forty feet away without aiming to kill.
19 Doc #20, Exh 2 at 41-42. Although not specifically stated in its
20 denial decision, BPT must have had some concern about whether Lang
21 had actually accepted responsibility and remorse for his crime
22 because BPT also asked that the new psychological exam explore this
23 issue. Doc #20, Exh 6.

24 Additionally, BPT expressed concern about Lang's plans
25 for release, noting that he had failed to obtain any employment
26 offers and had not sufficiently communicated with service providers
27 in the proposed release area. Doc #20, Exh 2 at 54-55. This
28 \\

10

concern is supported by Lang's own admission of his lack of employment offers.  Doc #20, Exh 6 at 25-26.

In sum, BPT's decision to deny Lang parole was supported by some evidence in the record.  BPT's legitimate concern with the cruel and callous nature of Lang's commitment offense and his withdrawal from AA, "iffy" release plans, unstable social history and insufficient remorse constitutes some evidence under Hill in support of BPT's determination that Lang posed an unreasonable risk of danger to society if released from prison.  See Hill, 472 US at 455-56.  The state court's rejection of Lang's due process claim was neither contrary to, nor did it involve an unreasonable application of, the Hill standard, nor was the rejection based on an unreasonable determination of the facts.  See 28 USC § 2254(d).

2

Lang claims that his due process rights were violated because BPT's denial decision relied on the unchanging factors of his commitment offense and pre-commitment history.  Doc #21 at 16.

The Ninth Circuit has warned that continually denying parole based solely on immutable factors such as commitment offense and pre-commitment history eventually may run afoul of due process. Although affirming BPT's parole denial in Biggs, the Ninth Circuit warned that "should Biggs continue to demonstrate exemplary behavior and evidence of rehabilitation, denying him a parole date simply because of the nature of Biggs' offense and prior conduct would raise serious questions involving his liberty interest in parole."  Biggs, 334 F3d at 916.  The court also warned that "continued reliance in the future on an unchanging factor, the circumstances of the offense and conduct prior to imprisonment,

1 runs contrary to the rehabilitative goals espoused by the prison
2 system and could result in a due process violation." Id at 917.
3 This warning was reissued in 2007: "[I]ndefinite detention based
4 solely on an inmate's commitment offense, regardless of the extent
5 of his rehabilitation, will at some point violate due process."
6 Irons v Carey, 505 F3d 846, 854 (9th Cir 2007). But in Irons the
7 court again affirmed BPT's parole denial. Id.

8      The uncertainty created by the Biggs and Irons warnings
9 is easily avoided in the instant action because BPT's decision to
10 deny Lang's parole was also based on at least one significant non-
11 immutable factor —— Lang's substance abuse and withdrawal from
12 substance abuse related self-help. This finding alone constitutes
13 some evidence under Hill and supports BPT's determination that Lang
14 posed an unreasonable danger to society if released from prison.
15 See Hill, 472 US at 455-56.

16                                3

17      Lang claims that BPT failed to appreciate his record for
18 the year preceding the hearing. Doc #1. He fails to cite anything
19 significant in this past year which BPT ignored, however.

20      The record in fact shows that BPT considered many pieces
21 of Lang's record from the year prior to the hearing. During the
22 hearing, BPT considered a report from September 2004 noting Lang's
23 beliefs about the facts of his commitment crime. Doc #20, Exh 2 at
24 13. A number of recent supporting letters to Lang were also read
25 during the hearing. Doc #20, Exh 2 at 21-27. Moreover, BPT
26 reviewed a number of Lang's prison activities for 2003 and 2004.
27 Id at 27-33. Lang's claim is without merit.
28 \\

V

For the above reasons, Lang's petition for a writ of habeas corpus is DENIED.

The clerk shall enter judgment in favor of respondent and close the file.

IT IS SO ORDERED.

**VAUGHN R WALKER**
United States District Chief Judge

13